UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

PARIS A. BRADFORD,

           Plaintiff,

v.

UNKNOWN LINSCOTT et al.,

           Defendants.

_____/

Case No. 1:23-cv-48

Honorable Sally J. Berens

**OPINION**

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

    This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

    Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendant Rohrig for failure to state a claim upon which relief may be granted. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Linscott and Ader: First Amendment claims based on denial of access to the courts; First Amendment claims based on interference with the right to petition for redress; Fourteenth Amendment claims for denial of due process; and Fourteenth Amendment claims for violation of equal protection rights. Plaintiff's claims against Defendants Linscott and Ader for interference with legal mail resulting in the denial of Plaintiff's First Amendment right to free speech and his Sixth Amendment right to counsel remain.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

### I.     Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Gus Harrison Correctional Facility (ARF) in Adrian, Lenawee County, Michigan. The events about which he complains, however, occurred at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. Plaintiff is serving a consecutive string of sentences that includes: (1) a sentence of 1 years, 6 months to 14 years for uttering and publishing imposed by the Berrien County Circuit Court on May 9, 2005; (2) a sentence of 1 to 5 years for possession of contraband by a prisoner imposed by the Kent County Circuit Court on October 18, 2006; (3) a sentence of 3 to 10 years for assault with the intent to commit sexual penetration imposed by the Cass County Circuit Court on October 16, 2009; (4) a sentence of 2 years for use of a firearm during the commission of a felony followed by a sentence of 3 to 20 years for carrying a concealed weapon and possession of a firearm and ammunition by a felon imposed by the Cass County Circuit Court on July 9, 2021; and (5) sentences of 4 to 20 years for assault of a prison employee and 3 to 15 years for resisting arrest imposed by the Cass County Circuit Court on January 13, 2023. The MDOC Offender Tracking Information System (OTIS) indicates that Plaintiff's "Earliest Release Date" is July 8, 2030, and his "Maximum Discharge Date" is July 1, 2076. https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=518162 (last visited July 8, 2024). The proceedings for Plaintiff's most recent convictions serve as the foundation for his claims.

Plaintiff sues LCF Corrections Officer Unknown Linscott, LCF Program Coordinator N. Ader, and LCF Grievance Coordinator J. Rohrig. Plaintiff's most recent jury trial occurred on October 4 and 5, 2022. In anticipation of that trial, Plaintiff's attorney mailed some legal

documents to Plaintiff. On September 29, 2022,[2] the documents were received in the LCF mailroom. On that date, Defendant Linscott rejected the legal mail and gave Plaintiff a Notice of Intent (NOI) for the rejection because the legal documents included "yellow highlighter." Linscott refused to give Plaintiff a photocopy of the three pages.[3]

Plaintiff reports that when he attended his trial on October 4, 2022, he had no idea what the documents contained or how those documents related to his defense. It is not clear why Plaintiff made no attempt to contact his attorney to have the attorney send a copy of the document without highlighting. Undoubtedly, once Plaintiff arrived at court and met with his attorney, he was able to learn the content of the document and how it related to his defense, but he has not shared those facts with this Court. He was ultimately convicted.

When Plaintiff returned from his trial on October 6, 2022, Defendant N. Ader conducted an administrative hearing on the mail rejection. Defendant Ader concluded that the three pages of

---

[2] Plaintiff first alleges the documents came in and were rejected on September 9, 2022 (Compl., ECF No. 1, PageID.4), but he later alleges the relevant date was September 29, 2022 (*Id.*, PageID.6). Additionally, Plaintiff's grievance describes the "Date of Incident" as September 29, 2022 (Grievance, ECF No. 1-2, PageID12). The Court concludes that the documents came into the prison on September 29, 2022. The Court may consider documents that are attached to a *pro se* complaint when considering whether the complaint states a claim upon which relief should be granted. *See, e.g.*, *Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the Eastern District of Michigan District Court's consideration of the attachments to plaintiff's complaint to determine that the plaintiff had received medical treatment and, therefore, failed to state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002 (6th Cir. May 23, 2018) (affirming this Court's consideration of the plaintiff's complaint allegations and the documents attached to the complaint to support the determination that the plaintiff failed to state a claim); *Hogan v. Lucas*, No. 20-4260, 2022 WL 2118213, at *3, n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to Hogan's complaint are referenced in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage" (citations omitted)).

[3] It is not clear from Plaintiff's allegations whether it was a three-page document with highlighting on one or more pages of a larger document with highlighting on three pages.

legal mail should be destroyed pursuant to MDOC policy. Plaintiff notes that he was not given the option to send the three pages back to his attorney.

On October 7, 2022, Plaintiff sent a kite to the mailroom asking for photocopies of the three pages. They were not provided. On October 12, 2022, Plaintiff submitted an administrative grievance regarding the failure to provide him a copy of the three pages. Plaintiff attaches parts of that grievance to his complaint, but he has not provided the initial grievance or the initial response. Plaintiff sues Defendant Rohrig for her response to the grievance—she rejected it. It is apparent from Plaintiff's allegations and the documents attached to the complaint that Rohrig rejected the grievance based on an assessment that Plaintiff was grieving the contents of the MDOC policy and that his grievance was untimely.

Plaintiff also filed an administrative grievance to appeal the result of the mail rejection hearing. Plaintiff attaches some of the documents relating to that grievance as well. Once again, he fails to include the initial grievance or the initial response. Although it is not clear what issues Plaintiff raised at the first step of the grievance procedure, at the second and third steps he argued that destroying documents sent by an attorney was unconstitutional.

Plaintiff contends that Defendants violated his First, Sixth, and Fourteenth Amendment rights, specifically mentioning violations of his equal protection and due process rights. Plaintiff claims that the mail policy, because it permits destruction of mail from an attorney, is unconstitutional. Plaintiff claims that there was no rational basis for destroying Plaintiff's mail from his attorney.

Plaintiff asks the Court to declare that Defendants have denied Plaintiff his rights under the First, Sixth, and Fourteenth Amendments and to determine that the MDOC's mail policy is unconstitutional on its face and as applied to him. Plaintiff seeks a monetary judgment in the

amount of $10,000.00. Plaintiff also asks for injunctive relief directing Defendant to stop relying on the MDOC mail policy to destroy legal mail and to stop removing money from the Prisoner Benefit Fund to carry out the unconstitutional functions of that policy.

## II.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under Section 1983

is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266,

271 (1994).

### A.    The MDOC's mail policy

The MDOC's mail policy, including attachments, spans 15 pages. MDOC Policy Directive

05.03.118 (eff. Mar. 1, 2018).[4] The policy acknowledges that prisoners are "permitted to send and

receive uncensored mail to or from any person or organization unless the mail violates this policy

or Administrative Rule 791.6603." *Id.* ¶ D. Nonetheless, a significant goal of the policy directive

is to prevent contraband from entering the prison. To achieve that goal, incoming mail is subject

to search. Sometimes, however, the mail cannot be effectively searched because it is difficult to

---

[4] The current version of the policy became effective November 6, 2023. The policy directive that governed matters at the time of the incidents alleged in the complaint was the one that became effective March 1, 2018. All references to the Prisoner Mail policy herein are to the policy as it existed at the time of the events in Plaintiff's complaint. MDOC policy directives are specifically referenced in Plaintiff's complaint. The Court takes judicial notice of the versions of those policy directives in effect at the time of the events alleged in Plaintiff's complaint. *See, e.g., Twombly*, 550 U.S. at 568 n.13 (noting that the district court "was entitled to take notice of the full contents of the published articles referenced in the complaint"); *Nixon v. Wilmington Trust Co*., 543 F.3d 354, 357 n.2 (6th Cir. 2008) (noting that "a court may consider a document not formally incorporated by reference in a complaint when the complaint refers to the document and the document is central to the claims"). The MDOC's policy directives are a proper subject of judicial notice under Fed.R.Evid. 201(b). *See Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002) ("Administrative regulations fall within the category of facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned'"); *see also International Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Zantop Air Transp. Corp*., 394 F.2d 36, 40 (6th Cir. 1968) ("a Court may take judicial notice of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority"). "The court may take judicial notice at any stage of the proceeding." Fed. R. Evid. 201(d) (emphasis added). Thus, the Court may take judicial notice even at this early juncture because the Court is permitted to take judicial notice sua sponte, Fed. R. Evid. 201(c)(1), and "the fact is not subject to reasonable dispute," Fed. R. Evid. 201(b). The content of the policy directives at issue are not subject to reasonable dispute. They are published by the MDOC on its publicly available government website.

discern whether it might contain contraband. That has proven to be a particularly difficult problem with regard to controlled substances. Thus, some items that seem innocuous are prohibited:

1. Mail that is taped, pasted, or otherwise joined or fastened to another item. . . . .

2. Mail which includes the use of crayon, non-graphite pencil, highlighter or other markers on the paper.

3. Mail which includes glitter, lipstick marks, unusual stains, body fluids, perfumes, oils, or other foreign or unknown substance on the paper.

4. Mail, including photographs and pictures, received on non-white, heavy weight (i.e., greater than 24 pound), construction paper, card stock, or photo paper. This does not include white lined paper.

5. Mail with stamps, stickers, labels, or anything affixed to the paper with an adhesive.

*Id*. ¶ OO. A quick search of Westlaw or the internet will turn up examples of attempts—successful and thwarted—to introduce contraband into prisons using these prohibited items.

In this case, the documents included highlighting. Plaintiff does not contest that determination, nor does he suggest that prohibiting highlighted items is inappropriate. Instead, he contends that the Defendants should be compelled to provide copies of highlighted documents or that Defendants should not be permitted to interfere with mailed legal documents even if they included highlighting.

The policy provides that ordinary incoming mail is opened and inspected:

All incoming mail that does not receive special handling pursuant to Paragraphs EE through HH shall be opened in one location at each facility and inspected at that location to determine if it contains money, controlled substances, or other physical contraband. All physical contraband shall be confiscated prior to delivery of the mail to the prisoner. The mail's written content also shall be skimmed, and if it appears from skimming the content that the mail may violate this policy, the item shall be read to determine if it is allowed.

MDOC Policy Directive, 05.03.118, ¶ DD (eff. Mar. 1, 2018).

If mail requires special handling, that does not prevent the mail from being opened and inspected. Instead, "[i]ncoming mail receiving special handling shall be opened and inspected for money, controlled substances, and other physical contraband in the prisoner's presence." *Id*. ¶JJ. Physical contraband is confiscated and not delivered to the prisoner; instead it is returned to the mailroom for processing in accordance with the provisions for confiscated regular mail. *Id*.

One of the categories of incoming mail that requires special handling is "legal mail." The Sixth Circuit Court of Appeals, when considering the MDOC's mail policies, defined legal mail "to include delivery of legal materials to a prisoner, properly and clearly marked as legal materials, via the U.S. Postal Service or alternative private courier services, and hand delivery." *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996). The MDOC has, over the years, modified its definition of incoming legal mail to include the following:

> Only mail received directly from an attorney or a law firm, a legitimate legal service organization, the Department of Attorney General, a prosecuting attorney's office, a court, a clerk of the court, a Friend of the Court office, or the Office of the Legislative Corrections Ombudsman is considered legal mail, and only if the mail is clearly identified on the face of the envelope as being from one of the above.

MDOC Policy Directive, 05.03.118, ¶ FF (eff. Mar. 1, 2018). In some respects the MDOC definition is broader than the Sixth Circuit's definition. The fact that incoming mail falls within the ¶ FF definition does not, standing alone, require special handling. Special handling is only required if the prisoner requests in writing that his incoming legal mail receive special handling. *Id*.

When Plaintiff's legal mail was opened, because it included highlighting it would have been immediately apparent that the mail was contraband under the policy. It would not have been given to Plaintiff. It would have been returned to the mailroom to be handled as contraband and it would have been rejected.

The procedures to be followed when mail is rejected are spelled out in ¶¶ VV–AAA of the prisoner mail policy. The first step is a notice of mail rejection identifying the specific item believed to be in violation of the policy and why the item is believed to be in violation of policy. *Id*. ¶ VV. Unless the prisoner agrees to forego a hearing, the policy calls for the conduct of a prompt hearing under Administrative Rule 791.3310. The Administrative Rule requires written notice of the purpose of the hearing, provides the prisoner the opportunity to be heard, and a summary report of the result from the hearing officer. Mich. Admin. Code R. 791.3310.

Plaintiff participated in a mail-rejection hearing immediately after he returned from his criminal trial. Plaintiff does not suggest that the hearing was not promptly held, or that he was denied notice or an opportunity to be heard. Moreover, as noted above, Plaintiff does not suggest that the documents were not highlighted.

If the hearings officer finds that the mail violates the policy, as Defendant Ader found here, the officer must determine how to dispose of the rejected mail. MDOC Policy Directive, 05.03.118, ¶ ZZ (eff. Mar. 1, 2018). Defendant Ader could choose from three different options: (1) return the document to the sender at the prisoner's expense; (2) mail it to a person designated by the prisoner at the prisoner's expense; or (3) destroy it. *Id*. ¶ HHH.[5]

Defendant Ader directed that the contraband be destroyed. There is some logic to that. There was little point in returning the document to Plaintiff's counsel; counsel undoubtedly already had the document. And there was little point in returning the contraband to a person of Plaintiff's choosing. If Plaintiff wanted the document, he could simply ask his counsel for a copy that was

---

[5] Plaintiff makes repeated reference to his right to have the rejected mail sent back to his attorney at his own expense. Although that is one of the disposition options the hearing officer can select, it is not the option Defendant Ader selected. There is nothing in the policy that suggests that the **prisoner** has a right to select the means of disposition of contraband mail.

not highlighted. Moreover, the purpose for which Plaintiff purportedly needed the document—to assist in defending against the criminal charges—was, at least in some respects, moot by the time of the hearing.

The hearing officer's report is not the end. The mail policy permits an appeal through the administrative grievance process. *Id.* ¶¶ EEE–FFF. Plaintiff appealed the mail rejection to no avail. Although Plaintiff disagreed with the result of the hearing and the subsequent appeals, it appears that each Defendant proceeded exactly as the MDOC policy directive required.

But, the policy directive was modified by a Director's Office Memorandum (DOM):

Due to an increase in contraband that has been coming into facilities from incoming prisoner mail, the Michigan Department of Corrections (MDOC) is implementing new ways of handling incoming mail and incoming legal mail. This DOM outlines the new processes staff shall follow when handling incoming mail. This DOM also addresses how mail sent to, and received from, the Office of Legislative Corrections Ombudsman, Disability Rights Michigan (DRM), and the Michigan Department of Civil Rights (MDCR) is handled.

INCOMING MAIL THAT DOES NOT REQUIRE SPECIAL HANDLING

Mail room staff shall continue to search incoming mail as set forth in PD 05.03.118 Prisoner Mail." Any incoming mail that does not require special handling, including photographs, that staff determine a prisoner may receive shall be photocopied and the photocopies placed in an envelope purchased by the Prisoner Benefit Fund (PBF). After the mail has been photocopied, mail room staff shall ensure all of the pages are accounted for and each photocopied page is clear and legible. Prisoners shall notify staff immediately if the mail they received is not legible or they believe it to be incomplete. Staff shall then review the mail to confirm that the mail the prisoner received is clear, legible, and complete. Staff shall only photocopy the mail again if the mail is unclear, illegible, or incomplete. The front of the envelope the mail came in shall also be photocopied and placed in the envelope, so the prisoner has the return address of the sender. After the original mail and envelope has been photocopied, it shall be retained for 14 calendar days. After 14 calendar days, the original mail and original envelope shall be placed in a locked bin for shredding or immediately shredded by staff if the locked bin is unavailable. Original vital documents that are mailed to a facility shall not be shredded and shall be forwarded to the Records Office. Original photographs that are mailed to a prisoner may be returned to the sender at the prisoner's expense after they are photocopied. Funds shall not be loaned for this purpose. The prisoner shall notify mail room staff within 14 calendar days of receipt of the photograph if they want to return the original photograph to the sender. Since prisoners are only receiving photocopies of

incoming mail, mail room staff shall no longer reject mail that prevents an effective search as set forth in Paragraph OO of PD 05.03.118.

MDOC DOM 2022-23R (eff. Jul. 21, 2022). The DOM eliminates the MDOC Policy Directive 05.03.118, ¶ OO reasons for rejecting **ordinary** mail. By the terms of the DOM, the modifications to the policy do not apply to mail requiring special handling.[6]

It is against that backdrop that the Court will consider Plaintiff's claims that his constitutional rights were violated.

### B.    Constitutional Protections for Legal Mail

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993) ("[T]he use of the mails is as much a part of free speech as the right to use our tongues." (internal quotation marks omitted))).

But a prisoner retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system." *Martin v. Kelley*, 803 F.2d 236, 240 n.7 (6th Cir. 1986) (quoting *Pell*, 417 U.S. at 822); *see also Turner v. Safley*, 482 U.S. 78 (1987). It is well established that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the

---

[6] The MDOC recently put in place a Director's Office Memorandum (DOM) that calls for a different procedure for mail requiring special handling at some of its correctional facilities—but not Plaintiff's. MDOC DOM 2024-20 (eff. Mar. 8, 2024). DOM 2024-20 indicates that the MDOC is leasing a mail screening device for six months that will be used at seven facilities. The device will be used to screen mail that requires special handling, such as legal mail. The mail will be screened without being opened. If the screening device identifies abnormalities or contraband, the mail will not be opened, it will simply be rejected.

considerations underlying our penal system." *Price v. Johnston,* 334 U.S. 266, 285 (1948). The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing *Pell*, 417 U.S. at 822–23; *Procunier v. Martinez*, 416 U.S. 396, 412 (1974)).

Incoming mail has long been recognized to pose a greater threat to prison order and security than outgoing mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner*, 482 U.S. at 78. And the possibility that incoming mail might introduce contraband into the prison is so obvious that courts have routinely upheld the right of prison officials to inspect incoming mail for contraband despite First Amendment free speech protection. *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 574–76 (1974).

For the same reasons, a prison official's inspection of incoming mail does not violate the Fourth Amendment. *See, e.g.*, *Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.") This Court has concluded that the reasoning in *Hudson* applies to a prisoner's incoming mail. *Hubbard v. Mann*, No. 2:21-cv-55, 2021 WL 2845099, at *9 (W.D. Mich. July 8, 2021).

Because Plaintiff alleges that the mail at issue here is "legal mail," there may be additional layers of constitutional protection. In *Sallier v. Brooks*, 343 F.3d 868, 873–74 (6th Cir. 2003), the Sixth Circuit Court of Appeals considered multiple potential sources of protection for legal mail, including the Sixth Amendment right to counsel, the First Amendment right to petition for redress of grievances, the First Amendment right of access to the courts, and the prisoner's general interest

14

in protecting the attorney-client privilege. Simply calling a particular correspondence "legal mail," however, does not implicate each and every one of those protections.

### 1.    First Amendment—Free Speech

As explained above, "[m]ail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin*, 511 F.3d at 1333. A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections systems." *Martin*, 803 F.2d at 240 n.7 (6th Cir. 1986) (quoting *Pell*, 417 U.S. at 822); *see Turner*, 482 U.S. 78 (1987). Plaintiff's complaint pits his right to receive mail against the MDOC's objective of preventing contraband from coming into the prison.

*Turner* clarified that a prison regulation could permissibly impinge on an inmate's constitutional rights "if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. The Court also identified factors that might be relevant in determining the reasonableness of a prison regulation:

> First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. *Block v. Rutherford*, supra, 468 U.S., at 586. Thus, a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational. Moreover, the governmental objective must be a legitimate and neutral one. We have found it important to inquire whether prison regulations restricting inmates' First Amendment rights operated in a neutral fashion, without regard to the content of the expression. *See Pell v. Procunier*, 417 U.S., at 828; *Bell v. Wolfish*, 441 U.S., at 551.

> A second factor . . . is whether there are alternative means of exercising the right that remain open to prison inmates. Where "other avenues" remain available for the exercise of the asserted right, see *Jones v. North Carolina Prisoners' Union, supra*, 433 U.S., at 131 courts should be particularly conscious of the "measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation." *Pell v. Procunier, supra*, 417 U.S., at 827.

> A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison

resources generally. In the necessarily closed environment of the correctional institution, few changes will have no ramifications on the liberty of others or on the use of the prison's limited resources for preserving institutional order. When accommodation of an asserted right will have a significant "ripple effect" on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials. *Cf. Jones v. North Carolina Prisoners' Union, supra*, 433 U.S., at 132–133.

Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation. *See Block v. Rutherford, supra* 468 U.S., at 587. By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an "exaggerated response" to prison concerns. This is not a "least restrictive alternative" test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint. *See ibid*. But if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.

*Id.* at 89–91 (parallel cites omitted).

Although rejecting and/or confiscating mailed contraband is certainly reasonably related to legitimate penological objectives, this Court could find no authority in this district or circuit that specifically considered whether highlighting on a page is appropriately considered contraband.[7] Plaintiff's allegations, accepted as true, do not compel a factual determination on each of the factors. The Court is left, therefore, to apply *Turner* to the regulation without precedent regarding any of the four factors—a fact-intensive inquiry.[8] Under those circumstances, applying *Turner* is

---

[7] In *Young v. Mich. Dep't of Corr.*, No. 2:21-cv-96, 2021 WL 3700760, at *5 (W.D. Mich. Aug. 20, 2021), this Court considered a claim that the prison confiscated highlighted legal mail pages. In *Young*, however, the plaintiff did not specifically raise the First Amendment "free speech" aspects of the confiscation, and he was provided photocopied pages of the highlighted pages. Thus, the *Young* decision does not provide meaningful guidance with regard to applying *Turner* to the regulation.

[8] *See, e.g.*, *Al Saud v. Days*, 50 F.4th 705, 714 (9th Cir. 2022) (stating that "[a]lthough *Turner* can require a fact-intensive inquiry, here the pleadings allege facts that compel our ruling for the government."); *Ramirez v. Pugh*, 379 F.3d 122, 130 (3d Cir. 2004) (noting that "we have historically viewed these inquiries as being fact-intensive . . . [requiring]a contextual record-sensitive analysis" (internal quotes omitted, bracketed material in original)); *Levitan v. Ashcroft*,

a task better suited to the summary judgment stage, because it "may not be easily resolved at the pleading stage." *Hardy v. Agee*, No. 14-2230, 2015 WL 13782958, at *3 (6th Cir. May 8, 2015). The Court will not dismiss on initial screening Plaintiff's First Amendment free speech claims against Defendant Linscott, who initially rejected Plaintiff's mail, or Defendant Ader, who ordered the destruction of the three highlighted pages.

With regard to Defendant Rohrig, however, according to Plaintiff, the only role Defendant Rohrig played in these events was to reject Plaintiff's appeal by grievance of Defendant Ader's decision. In *McNeal v. Hargett*, No. 20-1934, 2021 U.S. App. LEXIS 18770 (6th Cir. June 23, 2021), a case cited by Plaintiff in his second grievance (ECF No. 1-3, PageID.14), the Sixth Circuit held that defendants who have done nothing more than uphold the rejection and confiscation of legal mail by denying grievances or issuing rulings in the administrative hearing[9] are not subject to liability under Section 1983. Therefore, Plaintiff has failed to state any claim against Defendant Rohrig regarding rejection, confiscation, or destruction of Plaintiff's legal mail.

### 2. First Amendment—Access to the Courts[10]

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of

---

281 F.3d 1313 (D.C. Cir. 2002) (explaining that the "Court conducted the requisite fact-intensive analysis").

[9] Although Defendant Ader merely upheld Defendant Linscott's determination regarding the legal mail, Ader also ordered the destruction of the three highlighted pages. Thus, he did something more than just approve Linscott's decision.

[10] Plaintiff does not specifically mention "access to the courts" in his complaint. Nonetheless, he makes repeated references to violations of his First Amendment rights and also suggests that the confiscation of the pages interfered with his relationship with counsel. Construed liberally, Plaintiff's allegations implicate his right to access the courts.

legal information for prisoners. *Id.* at 817. The Court further noted that, in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id*. at 415.

Plaintiff has alleged that the interference with his legal mail occurred in connection with the type of case necessary to support an access to the courts claim: a criminal prosecution. He has also at least suggested that one or more Defendants interfered with his access to the criminal court by withholding the highlighted pages. But Plaintiff does not, in any way, allege facts that support an inference that the withholding of those documents cost him any remedy or defense. Indeed, because Plaintiff does not indicate the nature of the withheld documents, the impact of the withholding is a mystery. Accordingly, Plaintiff has failed to state a claim for violation of his right to access the courts.

### 3.      Sixth Amendment—Right to Counsel

In *Stanley v. Vining*, 602 F.3d 767 (6th Cir. 2010), the court recognized that there might be a cognizable claim under Section 1983 for violating the Sixth Amendment if a guard interfered with a prisoner's legal mail. *Id*. at 770. But not every interference with legal mail would constitute a Sixth Amendment violation. The *Stanley* court cited *Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974), for the proposition that the reach of the Sixth Amendment went no further than "protect[ion of] the attorney-client relationship from intrusion in the criminal setting . . . ." *Stanley*, 602 F.3d at 770 (internal quotation marks omitted). Moreover, to state such a claim, "there must be some allegation indicating an interference with the prisoner's relationship with counsel." *Id*.

19

Plaintiff has alleged facts that support an inference that Defendants Linscott's and Ader's respective roles in the rejection, confiscation, and destruction of the three pages may have interfered with Plaintiff's ability to consult with his attorney in a criminal case. Accordingly, the Court will not dismiss Plaintiff's Sixth Amendment claim against those Defendants on preliminary review.

### 4.    Fourteenth Amendment—Due Process

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

### a.    Plaintiff's Legal Mail

Plaintiff has a liberty interest in receiving his mail, legal or otherwise. *See Procunier v. Martinez*, 416 U.S. 396, 418 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989) ("The interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest . . . ."). Additionally, the pages withheld from Plaintiff were tangible personal property addressed to him. Thus, he may have had a property interest as well.[11]

---

[11] To the extent the pages were contraband, there is a question as to whether Plaintiff could acquire a property interest. *See Illinois v. Caballes*, 543 U.S. 405, 408 (2005) (discussing that "any interest in possessing contraband cannot be deemed 'legitimate'" (citation omitted)). For purposes of this analysis, the Court will proceed as if Plaintiff has a property interest in the three highlighted pages.

In Plaintiff's case, however, it is clear that he received the process he was due. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. With respect to incoming mail, the Supreme Court has held that the decision to censor incoming mail must be accompanied by "minimum procedural safeguards." *See Procunier*, 416 U.S. at 417–19.

The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original).

As noted above, Plaintiff alleges that he was provided notice of the mail rejection and an administrative hearing was held where Plaintiff was afforded an opportunity to be heard by a person other than the official who originally rejected the mail. Nothing more is required. *Procunier*, 416 U.S. at 418. Any suggestion that Plaintiff did not receive due process in connection with the rejection of the highlighted pages is belied by Plaintiff's allegations. Accordingly, Plaintiff has failed to state a procedural due process claim relating to the rejection or destruction of the highlighted pages.

### b.     Compliance with MDOC Mail Rejection Policies

Plaintiff suggests that Defendants did not comply with their own policies with regard to rejected mail.[12] To the extent Plaintiff invokes prison policy, he fails to allege a constitutional claim. Claims under Section 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007).

Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Plaintiff's allegations that Defendants violated prison policy therefore fail to raise a cognizable federal due process claim.

### C.     Grievance Process

Plaintiff contends that Defendant Rohrig shut Plaintiff out of the grievance process, purportedly giving rise to multiple constitutional violations, including violations of Plaintiff's First Amendment right to petition for redress of grievances and Plaintiff's Fourteenth Amendment right to procedural due process.

---

[12] Plaintiff notes that Defendant Linscott "did not give plaintiff an option to accept photocopies." (Compl., ECF No. 1, PageID.4.) Plaintiff identifies the relevant policy, MDOC Policy Directive 05.03.118, and that policy does not provide for photocopying mail requiring special handling. Plaintiff notes that Defendant Ader did not give Plaintiff an option to mail the documents back to his attorney. (*Id.*, PageID.5.) However, the policy does not require the hearing officer to afford the prisoner that option.

Mishandling or interfering with an administrative grievance is not active unconstitutional behavior. First, interference with the grievance remedy does not violate due process because Plaintiff has no due process right to file a prison grievance.[13] The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Rohrig could not deprive Plaintiff of due process by somehow interfering with the grievance process.

Moreover, Defendant Rohrig's actions (or inactions) with regard to the grievance process could not constitute a violation of the First Amendment right to petition the government. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minnesota State Bd. for Cmty. Colls. v. Knight*, 465 U.S.

---

[13] The grievance process is the designated means of "appealing" the result of a mail rejection hearing. MDOC Policy Directive 03.05.118 § EEE. That does not render that "appeal" part of the due process required for mail rejections. As noted above, the fundamental requirements of due process were met in the hearing before Defendant Ader. Subsequent appeals "are remedial; they are not part of the due process rights afforded to prison inmates." *Smith v. Pallas*, 1:17-cv-618, 2017 WL 5507754, at *7 (W.D. Mich. Nov. 17, 2017) (citing cases); *see also Gresham v. Verville*, No. 2:10-cv-198, 2011 WL 202023, at *5 (W.D. Mich. Jan. 19, 2011) (collecting cases).

271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Additionally, in unpublished decisions, the Sixth Circuit has held that a prisoner's allegation that a defendant improperly denied, or responded to, a grievance is not a claim of constitutional dimension because there is "no inherent constitutional right to an effective prison grievance procedure." *See Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000); *Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998); *see also Wynn*, 1994 WL 105907, at *1 (discussing that there is no constitutional right to a grievance procedure).

Furthermore, Plaintiff has not been barred from all means of petitioning the government for redress of grievances. Even if Plaintiff had been improperly prevented from filing a grievance, his right to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

The crux of Plaintiff's challenge is that Rohrig improperly rejected the grievance because, according to Plaintiff, he was not grieving the content of the mail rejection policy.[14] Plaintiff's

---

[14] MDOC Policy Directive 03.02.130, ¶ P. 8. (eff. Sept. 25, 2023), provides that a grievance is properly rejected if "[t]he prisoner is grieving <u>content</u> of the policy . . . ." *Id.*

grievance indicates otherwise. (*See* Prisoner Grievance, LCF 221000795028E, ECF No. 1-2, PageID.12.)[15] In his grievance, Plaintiff states "the DOM and policy relied on for the rejection is also unconstitutional . . . ." (*Id.*) Plaintiff's grievance plainly attacks the content of the MDOC prisoner mail policy. It was properly rejected for that reason.

Finally, Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Rohrig did anything more than reject a grievance. Therefore, Plaintiff has failed to allege that Defendant Rohrig engaged in any active unconstitutional behavior.

### D.    Equal Protection Violation

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is

---

[15] As set out above in note 2, the Court may consider documents that are attached to a *pro se* complaint when considering whether the complaint states a claim upon which relief should be granted. The Court will generally accept as true the statements that Plaintiff makes in the documents he has attached to the complaint. The Court will generally not accept as true statements made by others in such documents. But, "[w]hen a document attached to the complaint contradicts the allegations, the document trumps the allegations . . . [if the] document . . . 'utterly discredit[s]' the allegations." *In re Flint Water Cases*, 960 F.3d 303, 329 (6th Cir. 2020).

no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)). Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Plaintiff describes the nature of his equal protection claim in various ways. First, Plaintiff states: "Defendants . . . are allowing all other similarly situated prisoner[s] to receive their legal mail and maintain their privileged attorney/client relationship, but denied Plaintiff the same opportunity . . . ." (Compl., ECF No. 1, PageID.3.) Later in the complaint Plaintiff's focus shifts. He claims that the mail policy allows for all legal mail to be photocopied and then allows the photocopies to be delivered. Defendants, however, did not afford Plaintiff that opportunity. (*Id.*, PageID.6 ¶ 19.) Plaintiff offers other possible equal protection violations as well. He claims Defendant Rohrig violated Plaintiff's equal protection rights by erroneously recharacterizing his grievance as attacking the content of the mail policy. (*Id.*, PageID.7 ¶ 22.) Plaintiff claims Defendants denied Plaintiff equal protection of the laws by allowing "other similarly situated prisoners" the benefit of the mail policy photocopy option and denying Plaintiff that benefit. (*Id.* ¶¶ 23, 24.)

Here, although Plaintiff repeats the term "similarly situated" regarding the prisoners who are treated differently than he is, he offers no facts to support that conclusory statement. Plaintiff's contention that the mail policy calls for photocopying legal mail appears to be the necessary

26

premise of his equal protection claim. That contention, however, is unsupportable. The policy specifically excludes "mail requiring special handling" such as legal mail.

Even though the policy does not call for copying of legal mail, it is possible that Defendants, in practice, copied other prisoners' legal mail, but that is not what Plaintiff alleges. He specifically states that other prisoners are allowed the "benefits of that policy." (*Id*. ¶ 23; *see also* ¶ 24.) Plaintiff's choice to rely on his incorrect reading of the policy rather than the action of copying legal documents forecloses the possibility that Plaintiff's conclusory statement that he is being treated differently than "other similarly situated prisoners" actually means that he is being treated differently than prisoners who are similarly situated in all relevant respects.

The only prisoners who are similarly situated in all relevant respects would be prisoners whose legal mail falls within the policy definition of contraband. Because Plaintiff fails to allege facts that support an inference that the other inmates were similarly situated in all relevant respects, he fails to state an equal protection claim.

With regard to the equal protection claim relating to Defendant Rohrig's rejection of Plaintiff's grievance, Plaintiff entirely fails to allege that he was treated differently than similarly situated prisoners. Thus, that claim also falls short.

Accordingly, any intended Fourteenth Amendment equal protection claims will be dismissed.

## Conclusion

Having conducted the review required by the PLRA, the Court will dismiss Plaintiff's complaint against Defendant Rohrig for failure to state a claim upon which relief may be granted. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Linscott and Ader: First Amendment claims based on denial of access to the courts; First Amendment claims based on interference with the right to petition for redress; Fourteenth

Amendment claims for denial of due process; and Fourteenth Amendment claims for violation of equal protection rights. Plaintiff's claims against Defendants Linscott and Ader for interference with legal mail resulting in the denial of Plaintiff's First Amendment right to free speech and his Sixth Amendment right to counsel remain.

An order consistent with this opinion will be entered.


Dated:   July 31, 2024                                   /s/ Sally J. Berens
                                                         SALLY J. BERENS
                                                         United States Magistrate Judge