UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PARIS A. BRADFORD #518162,

    Plaintiff,

v.

JORDAN LINSCOTT, et al.,

    Defendants.

_____/

Hon. Robert J. Jonker

Case No. 1:23-cv-48

## REPORT AND RECOMMENDATION

This matter is before me on Defendants' Motion for Summary Judgment (ECF No. 40), which is fully briefed and ready for decision.[1] Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that Defendants' motion be **GRANTED,** and the complaint be **DISMISSED WITH PREJUDICE**.

### I. Background

Plaintiff is currently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility. He filed this action pursuant to 42 U.S.C. § 1983 on January 12, 2023, against Defendants Corrections Officer (CO) Jordan Linscott, Program Coordinator (PC) Nicholas Ader, and Grievance Coordinator J. Rohrig based on events that occurred at Lakeland

---

[1] Defendants filed their motion on July 16, 2025. Pursuant to Local Civil Rule 7.2(c), Plaintiff had 28 days to respond. W.D. Mich. LCivR 7.2(c). Including three days for mailing pursuant to Federal Rule of Civil Procedure 6(d), Plaintiff's response was due August 18, 2025. However, Plaintiff did not file it until more than one month later, on September 29, 2025—the date he signed the complaint and mailed it to the Court. (ECF No. 47 at PageID.340, 342.) Because Plaintiff never sought an extension of time, I would act within my discretion by declining to consider the untimely response. However, because Defendants have replied without objecting to the timeliness of Plaintiff's response, I will consider it in evaluating Defendants' motion.

Correctional Facility (LCF) in September and October 2022. (ECF No. 1.) Plaintiff's remaining claims against both Defendants are for interference with legal mail resulting in the denial of Plaintiff's First Amendment right to free speech and denial of his Sixth Amendment right to counsel.[2] (ECF Nos. 13 and 14.)

### A. Pre-Trial Events

In 2022, Plaintiff was facing criminal charges of assaulting a prison employee and two counts of assaulting, resisting, or obstructing a police officer. Mich. Comp. §§ 750.197c, 750.81d(1). The charges arose from a physical altercation between Plaintiff and three officers at the Cass County Jail in April 2021. *See People v. Bradford*, No. 365090, 2025 WL 555116, at *1 (Mich. Ct. App. Feb. 19, 2025); (ECF No. 41-2 at PageID.261.) Plaintiff's counsel had been in contact with Plaintiff about the prosecutor's amended plea offer as early as January 12, 2022. *Id.* Plaintiff's trial was scheduled for October 4 and 5, 2022. (ECF No. 1 at PageID.4.)

Shortly before the trial, Plaintiff's attorney mailed him some documents containing information to assist Plaintiff in deciding whether to accept the plea offer. (ECF No. 41-2 at PageID.261.) The documents arrived at LCF on September 29, 2022. (ECF No. 1 at PageID.6; ECF No. 20-4 at PageID.133.) Plaintiff alleges that CO Linscott rejected his legal mail and gave him a Notice of Intent (NOI) for the rejection because the legal documents contained "yellow highlighter." Plaintiff alleges that Linscott refused to give him a photocopy of the three pages. (ECF No. 1 at PageID.4.) However, Linscott gave Plaintiff the remaining pages of his legal mail. (*Id.*; ECF No. 41-2 at PageID.260.)

---

[2] In his response, Plaintiff continues to refer to his Fourteenth Amendment "right to be treated as all other simulary (sic) situated persons," *i.e.*, equal protection, but all of Plaintiff's Fourteenth Amendment claims, including equal protection, were dismissed on initial screening and are no longer in the case. (ECF No. 13 at PageID.80–81.)

Linscott confirms that he opened the mail in Plaintiff's presence and rejected certain pages containing yellow highlighting in accordance with MDOC policy. (ECF No. 41-6 at PageID.296–97.) The MDOC's prisoner mail policy, Policy Directive 05.03.118, provides that prisoners can "send and receive uncensored mail to or from any person or organization unless the mail violates this policy or Administrative Rule 791.6603." MDOC Policy Directive 05.03.118 ¶ D. (effective 03/01/2018). All incoming mail, including legal mail, is subject to inspection, although a prisoner's legal mail must be opened in his presence if he designates it for special handling. *Id.* ¶¶ DD., FF., JJ. "Mail opened in the prisoner's presence that . . . contains contraband shall be returned to the mailroom for processing in accordance with this policy." The policy prohibits "mail that may pose a threat to the security, good order, or discipline of the facility, facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner." *Id.* ¶ NN. Certain mail is deemed to "pose such risks under all circumstances and will therefore be rejected." *Id.* The policy also identifies mail that "prevents an effective search [and] may provide a means of introducing controlled substances [into a facility]," which "shall be rejected." Such "[m]ail . . . includes the use of . . . highlighter . . . ." *Id.* ¶ OO.2.

Prior to September 29, 2022, Plaintiff had a "few conversations on the phone" with his counsel about the charges and whether he should accept the plea offer. (ECF No. 41-2 at PageID.262–63.) Although Plaintiff denies having an opportunity to speak with his counsel about the plea offer after he received the NOI on September 29, 2022 (*id.* at PageID.265, 268), records show that his counsel exchanged several emails with LCF staff about scheduling calls with Plaintiff within a week before the trial to discuss the plea offer. (ECF No. 41-3.) The facility scheduled one call for September 27, 2022. Two days later, Plaintiff's counsel contacted the facility again requesting another call with Plaintiff because he had "received a revised offer for

3

[Plaintiff]." (*Id.* at PageID.274–75.) At 10:39 a.m. on Friday, September 30, 2022, the facility emailed Plaintiff's counsel that a call had been scheduled with Plaintiff later that day at 3:00 p.m. (*Id.* at PageID.274.) At 3:20 p.m.—20 minutes after the scheduled call—Plaintiff's counsel emailed the facility stating that Plaintiff "wants to think about the offer" and requesting a call for the following Monday morning. A call was apparently arranged for 9:00 a.m. for the following Monday, October 3, 2022. (*Id.*)

### B. The Trial

Plaintiff's trial was held on October 4 and 5, 2022. (ECF No. 41-2 at PageID.261.) When Plaintiff arrived at court, he told his counsel that he did not receive the mail counsel had sent him regarding the plea information. However, Plaintiff did not ask his counsel to show it to him because they were "already in the court process." (*Id.* at PageID.266.) During the trial, Plaintiff let his counsel "just do his thing." (*Id.* at PageID.269.) Plaintiff chose to testify and presented his version of the incident. (*Id.*) At the conclusion of the trial, the jury found Plaintiff guilty. (*Id.* at PageID.264.)

### C. Post-Trial Events

On October 6, 2022, after Plaintiff returned to LCF, Defendant Ader conducted an administrative hearing on the rejected pages pursuant to the mail policy and Administrative Rule 791.3310. Plaintiff was present for the hearing and was permitted to present his arguments. (*Id.* at PageID.270.) Defendant Ader issued a hearing report citing the relevant portion of the mail policy prohibiting Plaintiff from possessing the highlighted pages. The report specified that Plaintiff would be given photocopies of the pages, and the originals would be destroyed in accordance with the policy. (ECF No. 20-3 at PageID.125; ECF No. 41-5 at PageID.292.) Plaintiff received copies

of the three withheld pages sometime prior to October 17, 2022. (ECF No. 20-3 at PageID.124; ECF No. 41-2 at PageID.271.)

Plaintiff filed a grievance about the NOI and the decision to destroy the highlighted pages, claiming that both violated his rights. Plaintiff requested that the pages be returned to his attorney or that he be reimbursed for destruction of those documents by Defendants "at .50 per page, plus postage." (ECF No. 20-3 at PageID.123.) The respondent interviewed Plaintiff and offered him the option of mailing the pages back to his attorney, but Plaintiff rejected this option because he would have to sign a disbursement form to cover the postage. (*Id.*) Per policy, the documents usually are not destroyed until after the entire grievance process is completed. (ECF No. 41-5 at PageID.293.) Plaintiff appealed the grievance through all three steps of the process, but the denial was affirmed.

Plaintiff appealed his state-court conviction and sentence to the Michigan Court of Appeals raising several issues, including that his counsel was ineffective for failure to explain adequately the prosecutor's plea offer. *Bradford*, 2025 WL 555116, at *1–3. The appellate court granted Plaintiff's motion to remand for a hearing as to two issues, including the plea offer issue. *Id.* at *1. After hearing testimony from Plaintiff and his counsel, the trial court found that Plaintiff's counsel was not ineffective as he had explained the plea offer to Plaintiff "on several occasions, including two days before trial." *Id.* at *2. The trial court found Plaintiff's testimony that he did not understand several terms of the plea offer and that it was ultimately his decision whether to accept or reject the plea "utterly unbelievable, unconvincing, and implausible." *Id.* The court of appeals

concluded that "[t]he testimony indicates that defendant was fully aware of the terms of the prosecutor's plea offer and chose not to accept it."[3] *Id.* at *3.

## II.  Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III. Discussion

### A.  *Heck*-Bar

Defendants first contend that Plaintiff's claims are barred by the so-called *Heck* doctrine. *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). The doctrine provides that "in order to recover

---

[3] Although Defendants did not raise the issue, I note that the trial court's findings would have preclusive effect in this case under the doctrine of collateral estoppel, which requires: (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment; (2) the parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel. *See Storey v. Meijer, Inc.*, 431 Mich. 368, 373 n. 3 (1988). It is clear from the court of appeals decision that all three of the requirements for collateral estoppel are met here based on the trial court's hearing on remand. In addition, Michigan law recognizes "[c]rossover estoppel, which involves the preclusion of an issue in a civil proceeding after a criminal proceeding[.]" *Barrow v. Pritchard*, 235 Mich. App. 478, 481 (1999). Finally, under Michigan law, mutuality of estoppel is "not required when collateral estoppel [is] being used defensively." *Gilbert v. Ferry*, 413 F.3d 578, 581 (6th Cir. 2005) (citing *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 681 (2004)).

damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (emphasis in original). In *Heck*, the Court held that a state prisoner cannot make a cognizable claim under Section 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," unless he shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87 (footnote omitted). The holding in *Heck* has been extended to actions seeking injunctive or declaratory relief. *See Edwards*, 520 U.S. at 646-48 (declaratory relief); *Clarke v. Stalder*, 154 F.3d 186, 189-90 (5th Cir. 1998) (claim for injunctive relief intertwined with request for damages); *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401, at *1 (6th Cir. May 5, 1998) (injunctive relief).

I find this argument persuasive as to Plaintiff's Sixth Amendment right to counsel claim. That is, to the extent Defendants are found to have interfered with Plaintiff's right to counsel in his criminal case, such a finding would call into question the validity his conviction. *See Laughlin v. Stuart*, No. 22-1742, 2022 WL 12165755, at *1 (8th Cir. Oct. 21, 2022) (finding the plaintiff's Sixth Amendment claims based on the defendants' seizure of notes from her cell were *Heck*-barred); *Valdez v. Rosenbaum*, 302 F.3d 1039, 1049 (9th Cir. 2002) (finding the plaintiff's Sixth Amendment claim that a prison telephone regulation making it practically impossible to have a phone conversation with his attorney was *Heck*-barred). Because Plaintiff has not demonstrated that his conviction has been overturned through one of above-identified avenues, his Sixth Amendment claim is *Heck*-barred.

7

Defendants' argument is not persuasive, however, as to the First Amendment claim because success on the claim would not imply the invalidity of Plaintiff's conviction.

A *Heck*-based dismissal is without prejudice. *See Wheeler v. Dayton Police Dep't*, 807 F.3d 764, 767 (6th Cir. 2015). Because I conclude that Defendants are entitled to summary judgment on the merits as set forth below, I recommend that the Court dismiss the Sixth Amendment claims with prejudice. Should the Court reject that recommendation, the Sixth Amendment claims should be dismissed without prejudice under *Heck*.

### B.     Qualified Immunity

Defendants contend that they are entitled to qualified immunity. The doctrine of qualified immunity provides that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999). An "objective legal reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The qualified immunity inquiry requires a court to decide whether the facts as alleged or shown make out a constitutional violation and whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the court can conclude either that no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either prong of the inquiry without regard to sequence. *Id.* at 236.

The second prong of the qualified immunity analysis focuses on the state of the law at the time the alleged violation occurred. As the Supreme Court has observed, "this Court's case law

does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). It is not enough to show that the right is established at "'a high level of generality.'" *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 992 (6th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "[A] plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires." *Id.* at 993 (quoting *White*, 580 U.S. at 79). Stated differently, "[o]n both the facts and the law, specificity is [a court's] guiding light." *Novak v. City of Parma*, 932 F.3d 421, 426 (6th Cir. 2019). "An official's conduct flunks this 'clearly established' test only if the conduct's unconstitutionality was 'beyond debate' when the official acted, such that any reasonable person would have known that it exceeded constitutional bounds." *DeCrane v. Eckart*, 12 F.4th 586, 599 (6th Cir. 2021). To determine whether a right is clearly established, a district court within the Sixth Circuit may consider binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point. *Holzemer v. City of Memphis*, 621 F.3d 512, 527 (6th Cir. 2010) (quoting *Risbridger v. Connelly*, 275 F.3 565, 569 (6th Cir. 2002)).

        **1.**    **Sixth Amendment Claim**

The Sixth Amendment protects an individual's attorney-client relationship from intrusion in the criminal setting. *Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974). To establish a claim for interference with the Sixth Amendment right to counsel, "there must be some allegation indicating an interference with the prisoner's relationship with counsel." *Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010).

9

As an initial matter, Defendants contend that Plaintiff's Sixth Amendment claim fails as to Defendant Adler because Defendant Adler was not involved with the rejected mail until after Plaintiff's criminal trial concluded, when he conducted the administrative hearing. It is well established in the Sixth Circuit that to state a cognizable claim under Section 1983, a plaintiff must allege personal involvement by each of the named defendants. *See Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995). A plaintiff must present evidence of the defendant's involvement in the alleged constitutional deprivation to defeat a summary judgment motion. *Bennett v. Schroeder*, 99 F. App'x 707, 713 (6th Cir. 2004); *see also Lentz v. Anderson*, 888 F. Supp. 847, 850 (N.D. Ohio 1995) ("Because there is no evidence that Governor Voinovich, Department of Rehabilitation and Correction Director Wilkinson, OPI Director Anderson, and OPI Manager Mustard were personally involved in the prison's decision-making process which led to plaintiff's allegations of cruel and unusual punishment, they will be dismissed from any § 1983 liability.").

In his affidavit, Defendant Ader states that he scheduled the administrative hearing at the "first available opportunity because [Plaintiff] was away from the facility when I received the notice." (ECF No. 41-5 at PageID.292.) Although Plaintiff claims in his response that Defendant Adler was notified of the incident the day it occurred and denied Plaintiff copies of the withheld pages (ECF No. 47 at PageID.322–23), he presents no evidence, admissible or otherwise, to support this assertion. Therefore, Defendant Ader has shown that he is entitled to summary judgment on this claim for lack of personal involvement in the alleged violation.

Even if Defendant Ader had been personally involved in the deprivation, he and Defendant Linscott are both entitled to summary judgment because Plaintiff fails to create a genuine issue of material fact that Defendants interfered with his attorney-client relationship with counsel in any way. In his complaint, Plaintiff alleged that Defendants interfered with his criminal defense

because he had to attend trial with "no idea of what those documents contained or how those documents were related to his defense." (ECF No. 1 at PageID.5.) In his deposition, however, Plaintiff admitted that he knew that the content of the documents concerned his decision to accept a plea offer. (ECF No. 41-2 at PageID.264.) The email records Defendants present in support of their motion—corroborated by Plaintiff's counsel's testimony at the remand hearing in connection with this criminal appeal—confirm that counsel spoke to Plaintiff by telephone at least twice after Defendant Linscott rejected the three pages of Plaintiff's legal mail on September 29, 2022. (ECF No. 41-3.) To the extent the rejected pages would have had any impact on Plaintiff's decision whether to accept the plea offer, he had ample opportunity to discuss the matter with his counsel during the two phone conversations regarding the specific issue of the revised plea offer, which Plaintiff "want[ed] to think about[.]" (*Id.* at PageId.274.) Plaintiff presents no evidence to create a genuine issue of material fact that the rejection of the three pages of Plaintiff's legal mail had any impact, whosoever, on his Sixth Amendment right to counsel. Because Plaintiff fails to establish a Sixth Amendment violation, I find it unnecessary to address the clearly established inquiry of the qualified immunity analysis.

   2.   **First Amendment Claim**

Plaintiff contends that Defendant Linscott's rejection of the three pages of his legal mail and issuance of the NOI and Defendant Ader's decision in the administrative hearing that the pages of highlighted material would be destroyed violated his right First Amendment right to receive legal mail. I recommend that the Court resolve this claim on the second prong of the qualified immunity analysis because Defendants did not violate Plaintiff's clearly established rights.

Where a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff "to demonstrate both that the challenged conduct violated a constitutional or statutory

11

right, and that the right was so clearly established at the time of the conduct 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'" *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014) (quoting *Ashcroft*, 563 U.S. at 741). In the context of a motion for summary judgment, the plaintiff must establish that: (1) the defendant's conduct violated her rights, and (2) such rights were clearly established when the defendant acted. *See Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013).

In response to Defendants' qualified immunity argument, Plaintiff simply argues that Defendants are not entitled to qualified immunity without citing any case that he claims shows Defendants violated clearly established law. To this point, I previously noted that there appears to be no authority—including from the Sixth Circuit or this district—that has considered whether highlighting on a page is appropriately considered contraband. (ECF No. 13 at PageID69.) Moreover, I have found no decision from the Supreme Court or elsewhere that establishes the law on this issue with the requisite specificity. Accordingly, I recommend that Defendants are entitled to qualified immunity on Plaintiff's claim to the extent he seeks monetary damages from Defendants in their individual capacities.

Qualified immunity does not preclude Plaintiff's requests for declaratory and injunctive relief. *See, e.g., Kanuszewski v. Michigan Dep't of Health & Human Servs.*, 927 F.3d 396, 417–18 (6th Cir. 2019) (noting that "qualified immunity only immunizes defendants from monetary damages— not injunctive or declaratory relief") (internal quotation marks omitted). Nonetheless, Defendants contend, correctly, that because Plaintiff has sued Defendants only in their individual capacities, he lacks a proper basis to obtain such relief. First, it is undisputed that Plaintiff's claim involves a single, isolated event that concluded years ago, and it is undisputed that Plaintiff received a copy of the three pages of his rejected legal mail. Because there is no indication that he

is subject to ongoing First Amendment violations concerning his legal mail, Plaintiff lacks Article III standing to obtain prospective injunctive relief against Defendants. *See Satkowiak v. Marshall*, 771 F. Supp. 3d 937, 947 (E.D. Mich. 2025) (holding that the plaintiffs lacked Article III standing to seek prospective injunctive relief against the defendants in their individual capacities because they failed to allege that they were subject to ongoing Fourth Amendment violations) (citing *Kanuszewski*, 927 F.3d at 406 ("[T]he fact that a harm occurred in the past does nothing to establish a real and immediate treat that it will occur in the future, as is required for injunctive relief.")). In addition, Supreme Court has explained that Article III requires "a live case or controversy at the time that a federal court decides the case." *Burke v. Barnes*, 479 U.S. 361, 363 (1987). Where, as here, there is no "live-case-or-controversy," the mootness doctrine is triggered, and the constitutional requirements for justiciability cannot be met. *Kentucky Right to Life, Inc. v. Terry*, 108 F.3d 637, 644 (6th Cir. 1997).

Moreover, Plaintiff's transfer to a different facility has mooted his request for individual capacity injunctive relief against Defendants, who remain employed at LCF. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) ("[A]ny declaratory or injunctive relief that Colvin seeks stemming from his complaint has been mooted by his transfer to a different prison facility."); *Henderson v. Martin*, 73 F. App'x 115, 117 (6th Cir. 2003) (holding that inmate's claim for injunctive relief requesting transfer to a smoke-free housing unit, based on alleged exposure to second-hand tobacco smoke, was rendered moot by his transfer to a different facility).

Finally, as noted above, Plaintiff admits having received copies of the three pages that were rejected, which he may use to support any claim for post-conviction relief in his criminal case.

## IV. Conclusion

For the reasons set forth above, I recommend that the Court **grant** Defendants' motion for summary judgment (ECF No. 40) and **dismiss** the complaint **with prejudice**.

Dated: October 23, 2025	  /s/ Sally J. Berens	
	SALLY J. BERENS
	U.S. Magistrate Judge

### NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).